IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANNETTE DIES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:04-0113 |
| ) | Judge Trauger |
| PROVIDENT LIFE AND ACCIDENT ) | Magistrate Judge Griffin |
| INSURANCE COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Presently pending before the Court are: (1) a Motion for Judgment on the Pleadings (Docket No. 36) filed by Plaintiff Jannette Dies, to which Defendants Nissan North America, Inc. ("Nissan") and Nissan North America, Inc. Long Term Disability Plan ("the Plan") have responded in opposition (Docket No. 49); (2) a Motion for Summary Judgment (Docket No. 40) filed by Defendants Nissan and the Plan, to which Plaintiff has responded in opposition (Docket No. 52); and (3) a Motion for Summary Judgment on Plaintiff's Claim for ERISA § 502(c) Penalties for Failure to Provide Plan Documents (Docket No. 61), to which Defendants Nissan and the Plan have responded in opposition (Docket No. 50)[1].

---

[1] Plaintiff filed a Memorandum in Support of her Motion for Summary Judgment on March 30, 2005. (Docket No. 37). Plaintiff inadvertently failed to file her Motion on that same day. (Docket No. 59). Plaintiff subsequently sought permission to file her Motion out of time (id.), which the Court granted (Docket No. 60).

1

**Factual Background and Procedural History**[2]

Plaintiff Jannette Dies is a former employee of Nissan. Through her employment with Nissan, Ms. Dies received a disability policy with Provident Life and Accident Insurance Company ("Provident") for long-term disability. Provident insured the Plan and served as Ms. Dies's long-term disability claims fiduciary and claims administrator. Provident is a wholly-owned subsidiary of the UnumProvident Corporation ("UPC"). Nissan is the plan sponsor and plan administrator of the Plan and the other employee benefits plans.

On or about February 24, 1999, Ms. Dies fell down some stairs and injured her back. The day after the accident, Ms. Dies left active employment at Nissan to go on disability leave. Ms. Dies timely filed a claim for long-term disability benefits under the Plan. Provident approved Ms. Dies's claim in October 1999. Provident began paying Ms. Dies long-term disability benefits retroactively from August 26, 1999. From August 1999 through December 2001, Provident paid Ms. Dies long-term disability benefits under the Plan. During that time, Nissan considered Ms. Dies to be on a medical leave of absence and provided her with other employee benefits.[3]

Provident later determined that Ms. Dies was no longer disabled as defined by the Plan as of December 31, 2001, and Provident discontinued her long-term disability benefits. On January 31, 2002, Nissan administratively terminated Ms. Dies's employment pursuant to company policy,

---

[2]Except as noted, the facts and procedural history are undisputed and taken from the Administrative Record (Docket No. 16), Plaintiff's Response to Defendants' Statement of Undisputed Facts (Docket No. 53), and Defendants' Response to Plaintiff's Additional Statement of Facts (Docket No. 56).

[3]Under Nissan policy, the receipt of long-term disability benefits results in a disability leave of absence. This leave of absence extends an employee's active employment and results in Nissan continuing the employee's attendant benefits. (Smith Decl. at Exh. C, pages 21 and 24).

2

which provided that only active or inactive (on leave) employees and retirees are entitled to receive health and life insurance benefits.[4] (Smith Decl. ¶¶ 9, 10, 12, 14, 17, and Exh. A, page 10, Exh. B, pages 3 and 11, Exh. C, page 39, and Exh. E, pages 9-13, 44-45).

Ms. Dies exhausted her appeals under the Plan. On February 11, 2004, she initiated this action seeking recovery of continued long-term disability benefits from Provident and UPC and "benefits to which Plaintiff would have been entitled under the Plan, and continued benefits payable while the Plaintiff remains disabled under the terms of the Plan, and such other benefits as would have been paid or provided to Plaintiff had the Plaintiff been found disabled under the Plan" ("attendant benefits") from Provident, UPC, Nissan, and the Plan. (Compl. ¶ 49). These attendant benefits include health insurance, life insurance, and continued pension credits.

In her Complaint, Plaintiff also sought penalties under ERISA § 502(c), 29 U.S.C. § 1132, from Nissan for its alleged failure to produce Plan documents in response to Plaintiff's written requests. Plaintiff contends that her counsel sent letters on four separate occasions--March 13, 2003, April 14, 2003, May 22, 2003, and October 22, 2003--on Plaintiff's behalf to Nissan requesting Plan documents. These letters also inquired about what other employee benefits were available should Plaintiff be found disabled, and whether it was necessary to separately apply or appeal for such other benefits. Nissan never responded prior to this litigation. Plaintiff addressed the letters to Nissan, 983 Nissan Drive, Smyrna, TN 37167.

---

[4]Under the terms of Nissan's employment policies, an employee's eligibility for leave of absence is contingent on his or her either being in the waiting period for long-term disability benefits or receiving long-term disability benefits. (Smith Decl. ¶ 11 and Exh. C, page 29, Exh. E, pages 9-13, 44-45).

3

Plaintiff has produced certified mail return receipts for two of the four request letters. Don Allen, who worked in the purchasing department at Nissan, signed for the first request letter on or about March 17, 2003. Plaintiff does not have a return receipt for the second or third request letter. Plaintiff's fourth request letter, sent in October 2003, was signed for by Barbara Blick, an employee in the mail room of the office services department at Nissan. Neither Mr. Allen nor Ms. Blick ever worked in the compensation and benefits department at Nissan or served as the Plan Administrator. Plaintiff never telephonically contacted anyone at Nissan to inquire about Nissan's failure to respond to the request letters.

On July 20, 2004, 160 days after Plaintiff filed this action, Nissan provided to Plaintiff two Plan items entitled: "Comprehensive Security Plan, effective January 1, 2004" and "Nissan North America, Inc. Long Term Disability Benefits." Two additional Plan items--the summary plan description and the employee handbook--were not provided by Nissan until submitted as exhibits to Defendants' Motion for Summary Judgment on March 31, 2005.

In February 2005, Plaintiff, Provident, and UPC settled Plaintiff's claims against Provident and UPC for recovery of long-term disability benefits under the Plan. Plaintiff agreed to release and forever discharge Provident and UPC from "any and all legal responsibilities, claims, rights of action, causes of action, suits, debts, liabilities, judgments, demands, damages, costs, attorneys' fees, expenses, benefits and compensation whatsoever that Dies now has or has had on account of, arising from, relating to, or in any way growing out of any contract of disability insurance between Dies" and UPC and/or Provident. (Docket No. 65--Sealed). Plaintiff received a one-time lump sum payment. (Docket No. 63). In connection with the settlement, neither Provident nor UPC admitted any wrongdoing as to Provident's handling of Plaintiff's claim for long-term disability

benefits or as to Provident's finding that Plaintiff was not "disabled," as that term is defined by the Plan.

## Plaintiff's Claim for Determination of Eligibility under the Plan

Plaintiff has filed a Motion for Judgment on the Pleadings (Docket No. 36), in which she asks the Court to declare her eligible for long-term disability benefits under the Plan. Plaintiff concedes that, since she has already settled her claims against Provident, such a ruling by the Court would not entitle her to an award of disability benefits. (Docket No. 38 at 2). However, Plaintiff posits that a finding of eligibility under the Plan would entitle her to the attendant benefits she seeks from Nissan. Alternatively, Plaintiff seeks a remand for a reconsideration of Plaintiff's disabled status.

In response, Defendants Nissan and the Plan contend that Plaintiff's claim for attendant benefits was necessarily contingent on her continued status as an employee at Nissan. Because Plaintiff is no longer an employee of Nissan, she is not entitled to benefits attendant to her previous employment at Nissan. In addition, Defendants argue that Plaintiff foreclosed her opportunity to be reinstated as an employee at Nissan when she settled her claim for continued long-term disability benefits with UPC and Provident. Moreover, Defendants point out that Plaintiff failed to allege in this action that her administrative termination by Nissan in January 2002 was wrongful or that Nissan should have reinstated Plaintiff to active or inactive employment status at Nissan. Defendants insist that, in any event, they should not be required to step into Provident's position at this late date to justify decisions that Provident made, particularly when such decisions can never be changed, due to settlement, and would have no effect on Plaintiff's lack of entitlement to benefits from Nissan. Thus, Defendants conclude, Plaintiff's arguments in support of her Motion

5

for Judgment on the Pleadings are misdirected. Defendants have filed a separate Motion asking the Court to grant summary judgment in their favor on this claim. (Docket No. 40).

**A.     Judgment on the Pleadings Standard**

A motion for judgment on the pleadings pursuant to Rule 12(c) "should not be granted unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir.1998) ("The standard of review applicable to a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion.") (citation omitted). All well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A motion for judgment on the pleadings is directed solely to the complaint and any exhibits attached to it.  Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion for judgment on the pleadings. Consequently, a complaint will be dismissed pursuant to Rule 12(c) if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir.1978); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted).

**B.     Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file,

6

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the factual evidence and draw reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); McLean v. Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). "The Court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" Little Caesar Enters., Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). If the nonmoving party, however, fails to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden, the moving party is entitled to summary judgment as a matter of law. See Williams v. Ford Motor Co., 187 F.3d 533, 537–38 (6th Cir. 1999).

To preclude summary judgment, the nonmoving party "is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." Gaines v. Runyon, 107 F.3d 1171, 1174–75 (6th Cir. 1997). "The mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a

7

jury to return a verdict for that party." Anderson, 477 U.S. at 249. To determine whether the nonmoving party has raised a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his favor. Id. at 255.

The Court should also consider whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Amway Distribs. Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 251–52). "There is no genuine issue for trial unless the nonmoving party has produced enough evidence for a jury to be able to return a verdict for that party." Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). If the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative," or enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 249–52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citations omitted).

**C.   Analysis**

Although Plaintiff is correct that a court is empowered to adjudicate an ERISA plan participant's eligibility for benefits under a plan under § 1132(a)(1)(B), this court, under the present set of facts, is not so empowered. When Plaintiff settled her claims against Provident and UPC for recovery of long-term disability benefits under the Plan, Plaintiff agreed to "release[] and forever discharge[]" Provident and UPC from "any and all legal responsibilities, claims, rights of action, causes of action, suits, debts, liabilities, judgments, demands, damages, costs, attorneys' fees, expenses, benefits and compensation whatsoever that Dies now has or has had on account of,

8

arising from, relating to, or in any way growing out of any contract of disability insurance between Dies" and UPC and/or Provident "including, but not limited to, any claim for short-term disability benefits, any claim for long-term disability benefits . . . ." (Docket No. 65 ¶ 2--Sealed)(emphasis in original). This language shows that not only did Plaintiff release her claim for long-term disability benefits, she released her claim for a declaratory judgment determining whether she was or is eligible for disability benefits under the Plan.

By settling her claim with Provident and UPC for long-term disability benefits in this manner, Plaintiff has foreclosed any possibility that Nissan can provide her with attendant benefits. Plaintiff's counsel did not reserve in the settlement with the insurance companies Plaintiff's right to ask the court to determine eligibility issues on the papers filed. Therefore, the court finds that the controversy between Plaintiff and the insurance companies for the award of benefits is moot, and it is beyond this court's jurisdiction to decide the pending motions in terms of whether or not she is eligible for benefits because she has settled her claim for benefits against the insurance companies.

Moreover, only Nissan employees and retirees can receive the attendant health and life insurance benefits Plaintiff now seeks, and Plaintiff is neither an employee nor a retiree of Nissan. For several years, Plaintiff was on a leave of absence from her employment with Nissan, during which time Provident provided long-term disability benefits to Plaintiff and Nissan provided attendant benefits to Plaintiff. When the definition of "disability" changed pursuant to the Plan to a more stringent standard, Provident terminated Plaintiff's long-term disability benefits, and Nissan then administratively terminated Plaintiff because she ceased to be an on-leave inactive employee.

9

Pursuant to company policy, when Plaintiff no longer qualified for long-term disability benefits, she was no longer entitled to leave or to the benefits contingent on her status an as employee at Nissan.

After Provident's denial of benefits in January 2002, Plaintiff challenged Provident's finding that she was no longer disabled through Provident's administrative appeals process. When that process failed to result in a reversal and a reinstatement of her long-term disability benefits, Plaintiff filed the instant lawsuit. Plaintiff clearly alleged a claim for long-term disability benefits. However, Plaintiff has never challenged Nissan's administrative termination of her attendant benefits and never sought to be reinstated as an employee at Nissan, even in the context of this lawsuit. Neither has she ever alleged wrongful termination by Nissan. She never sought to amend her Complaint to include such allegations before the claims were time-barred.

It is Plaintiff's position that she never challenged the administrative termination of her employment because her status as an employee was dependent upon whether she was found disabled by Provident, and it is undisputed that Plaintiff exhausted her appeals with regard to Provident's finding that she was not disabled. Even so, once Plaintiff filed this action, in order to preserve her right to obtain attendant benefits from Nissan distinct from her claims for long-term disability benefits against the insurance companies, Plaintiff could have alleged separate claims for relief against Nissan, such as wrongful termination and failure to reinstate her employment. However, Plaintiff did not. When she settled her claims against the insurance companies, she clearly was settling her claim without amendment or reversal of Provident's finding that she was no longer disabled. She should not be permitted to disavow that settlement and its terms in order to seek benefits from Nissan.

10

In sum, the Court finds that Plaintiff's Motion for Judgment on the Pleadings should be denied and Defendants' Motion for Summary Judgment should be granted as to Plaintiff's claim for determination of eligibility under the Plan and for attendant benefits from Nissan because (1) the controversy between Plaintiff and the insurance companies for the award of benefits is moot, and the Court therefore lacks jurisdiction to decide the pending motions in terms of whether Plaintiff is eligible for benefits because she has settled her claim for benefits against the insurance companies; and (2) only Nissan employees and retirees can receive the attendant benefits Plaintiff seeks, and Plaintiff is not an active employee, an on-leave inactive employee, a retiree, or eligible for reinstatement.

## Claim for ERISA § 502(c) Penalties for Failure to Produce Plan Documents

In addition to seeking a judicial determination of eligibility for long-term disability benefits under the Plan, Plaintiff has filed a Motion for Summary Judgment (Docket No. 61) as to her claim for ERISA § 502(c), 29 U.S.C. § 1132(c), penalties for Nissan's failure to timely respond to Plaintiff's written requests for Plan documents. Plaintiff also seeks an award of attorney's fees and costs related to this issue. ERISA 502 §(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B), provides that:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the Court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the Court may in its discretion order such other relief as it deems proper.

As required by the Debt Collection Improvement Act of 1995, the $100 limit has been increased

to $110 for violations after July 29, 1997.  62 Fed. Reg. 40696.  The purpose of ERISA § 502(c) is to induce plan administrators to timely provide participants with requested plan documents and to penalize failures to do so.  Barling v. Fruehauf Corp., 29 F.3d 1062, 1068 (6th Cir. 1994).  A showing of bad faith on the part of the defendant or prejudice to the plaintiff is not required; however, some courts have declined to impose a penalty under § 1132(c)(1)(B) in the absence of a showing of prejudice or bad faith.  Id. (citations omitted).  Section 502(g) provides that a district court "in its discretion may allow reasonable attorney's fees" in any action under the subchapter of ERISA which includes § 502, 29 U.S.C. § 1132(g).

According to Plaintiff, on four separate occasions--March 13, 2003, April 14, 2003, May 22, 2003, and October 22, 2003--Plaintiff's counsel sent letters on Plaintiff's behalf to Nissan seeking Plan documents, and Nissan never responded prior to litigation.  Two of these letters were signed for by Nissan employees, in March and October of 2003.  But it was not until July 20, 2004, well after Plaintiff's Complaint was filed, that Nissan provided two Plan items, "Comprehensive Security Plan, effective January 1, 2004" and "Nissan North America, Inc. Long Term Disability Benefits."  Nissan provided two additional Plan items--the summary plan description and the employee handbook--on March 31, 2005.

Plaintiff seeks a penalty of $51,040.00, which represents $110 per day for 464 days from April 13, 2003 (30 days after the initial request that was received by Nissan and signed for by Nissan employee Don Allen) to July 20, 2004 (the date Nissan provided the "Comprehensive Security Plan, effective January 1, 2004" and "Nissan North America, Inc. Long Term Disability Benefits").  Although Plaintiff does not specifically seek penalties for Defendants' failure to provide the summary plan description or employee handbook until March 30, 2005, Plaintiff

12

suggests that the court "may find it additionally appropriate to further penalize Defendants for those plan documents it [sic] did not bother providing until it [sic] sought to rely on them in its [sic] motion for summary judgment." (Docket No. 52 at 11). Plaintiff also seeks attorney's fees and costs. If the court finds that the evidence is insufficient to prove that Defendants received her requests for Plan documents, Plaintiff alternatively requests an evidentiary hearing so the Nissan employees who signed the return receipts can testify as to whether they did receive these letters and what they did after receiving these letters.

In opposing Plaintiff's Motion, Defendants first argue that Plaintiff's request for penalties should be denied because she failed to file a statement of undisputed facts supporting her Motion for Summary Judgment. The four written requests for Plan documents, as well as the certified mail receipts for each letter and return receipts for two letters, were attached to Plaintiff's brief. (Docket No. 37, Exhs. A-H). Nissan has not disputed their authenticity but does claim they were not received in the proper department. (Docket No. 48 at 2)

Nissan and the Plan next argue that, "under the plan, a participant must address her written request for Plan documents to: Plan Administrator, Nissan North America, Inc., 983 Nissan Drive, Smyrna, TN 37167." Because Plaintiff sent the letters to "Nissan, 983 Nissan Drive, Smyrna, TN 37167", Nissan contends that the letters were improperly addressed and that Nissan's compensation and benefits department was unaware of the request or otherwise would have replied. Plaintiff sent her letters to the above general address, but they were mailed to the attention of "Personnel," "Personnel/Benefits Dept.," or "Legal Office," with the accelerating notations at the top in bold: "SECOND REQUEST," "THIRD REQUEST," and "FOURTH REQUEST." (Docket No. 37, Exhs. A, C, E, and G). Furthermore, even though Plaintiff did not include the title "Plan

13

Administrator" in the address, it is undisputed that Plaintiff sent the request letters to the mailing address specified in the Plan. The Plan clearly states that Nissan, "the Company," is the Plan Administrator. (Exh. B to Defs.' Mem. in Supp. of Mot. for Summ. J. at 28). Therefore, a letter addressed to "Nissan" is addressed to the Plan Administrator. The Plan does not state that the request should be sent to the benefits and compensation department.

Nissan and the Plan contend that Plaintiff should have followed up her letters with a telephone call or an e-mail. Defendants suggest that Plaintiff opted not to follow up because she wanted to procure a "windfall" of penalty damages from Nissan under § 502(c). (Docket No. 50 at 6). The statute itself requires written, not oral, requests for plan documents. See Nestico v. United Auto Workers, No. 04-73157, 2005 WL 1529741, at *9 (E.D. Mich. June 22, 2005)(denying plaintiff's request for penalties under § 1132(c)(1)(B) because plaintiff made his request for documents by telephone only), opinion vacated in part on other grounds, 2005 WL 2072107 (E.D. Mich. Aug. 24, 2005).

Plaintiff's Complaint was filed on February 11, 2004. Defendants did not provide any Plan documents until July 20, 2004, and the employee handbook and summary plan description were not provided until March 30, 2005.

Defendants maintain that Plaintiff was not prejudiced in pursuing her claim for long-term benefits by their failure to produce Plan documents. According to Defendants, the court should not apply § 502 to penalize Nissan for its failure to produce documents, given that Plaintiff has not relied upon any of those documents in seeking a reversal of the decision to deny Plaintiff's continued long-term disability benefits under the Plan or in seeking an award of attendant benefits from Nissan. If the court decides to impose penalties, Nissan contends that the court should

14

exercise discretion under § 502 to limit the penalty damages to a nominal amount, since Nissan's failure to produce was not willful but was unknowing.  Defendants contend that the court should not award attorney's fees and costs to Plaintiff for the same reason.

Plaintiff posits that prejudice is not required but, in any event, Plaintiff has been prejudiced by Defendants' failure to produce the requested documents.  Plaintiff points out that, in the course of this litigation, Nissan has argued repeatedly that Plaintiff has not complied with various Plan requirements with respect to her claim for attendant benefits.  Nissan has argued that Plaintiff should have administratively challenged the termination of her employment rather than just challenging Provident's termination of long-term disability benefits, that Plaintiff should have sued the Comprehensive Security Plan rather than the Long Term Disability Plan, and that Plaintiff needed to sue challenging her termination of employment to properly address the attendant insurance benefits.  Thus, Plaintiff urges, Nissan cannot simultaneously argue that Plaintiff did not follow Plan procedural requirements to perfect a claim for attendant benefits, yet assert there was no prejudice resulting from its failure to provide Plan documents.

In the absence of proof to the contrary, the court accepts Nissan's explanation that the failure to respond to Plaintiff's four written requests for Plan documents before suit was filed was not deliberate and declines to assess penalties against Defendants under ERISA § 502(c) for their failure to provide Plan documents during the time period prior to the filing of Plaintiff's Complaint.  However, Nissan has not explained to the court's satisfaction why, after Plaintiff filed her Complaint alleging that Nissan had failed to respond to four request letters, Nissan waited <u>170 days</u> to provide Plan documents to Plaintiff.  Indeed, Nissan offers no explanation at all as to why it waited <u>an additional seven months</u> to provide two other Plan documents to Plaintiff.

15

Regardless of whether Plaintiff was actually prejudiced by Nissan's failure to timely provide the Plan documents, Nissan should not be rewarded for such conduct. Prejudice is only one factor to be considered in determining whether to award penalties under § 502. Even if Nissan did not receive any of Plaintiff's request letters, as it contends, Nissan should have responded more promptly once it became aware of Plaintiff's claims in the Complaint.

Accordingly, the court imposes a penalty under § 502 of $25 per day per document (2 documents) for 160 days (February 11, 2004, to July 20, 2004), for a total of $8,000.00. The Court imposes an additional penalty of $25 per day per document (2 documents) for 413 days (from February 11, 2004, to March 31, 2005), for a total of $20,650.00. Defendants therefore are assessed a total penalty under § 502(c) of $28,650.00 for failing to provide Plaintiff with requested Plan documents.

Assessing a penalty against Nissan under these circumstances comports with the intent of the statute, which is to induce plan administrators to expeditiously provide requested plan documents by punishing those who fail to comply. This penalty is consistent with other penalties assessed by district courts within our Circuit under similar facts. See e.g., Bartling, 29 F.3d at 1068-69 (affirming district court's assessment of $100 per day per document penalty to be split among 78 plaintiffs, totaling $25,200); Daniel v. Eaton, 839 F.2d 263, 268 (6th Cir. 1988) (affirming district court's award to plaintiff of $25 per day for 278 days ($6,950.00) for defendant's failure to supply a copy of the plan requested by plaintiff, after district court accepted defendant's explanation that the failure to respond was not willful but was the result of negligence or inadvertence, and Plaintiff made no showing of prejudice); Lampkins v. Golden, No. 95-2001, 1996 WL 729136, at **3-4 (6th Cir. Dec. 17, 1996)(affirming district court's award to plaintiff of $75 per

16

day for 438 days ($32,850.00) for failure to supply a copy of a plan instrument requested by plaintiff, even absent a finding of prejudice to plaintiff because statute does not require prejudice and penalty comports with general intent of statute).

The court declines to award attorney's fees and costs to Plaintiff under these facts. Each party will bear its own fees and costs.

## Conclusion

For the reasons stated above, the Motion for Judgment on the Pleadings (Docket No. 36) filed by Plaintiff Jannette Dies will be **DENIED**.

The Motion for Summary Judgment (Docket No. 40) filed by Defendants Nissan North America, Inc. and Nissan North America, Inc. Long Term Disability Plan will be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion will be **GRANTED** as to Plaintiff's claims for a judicial determination of eligibility for long-term disability benefits under the Plan and for attendant benefits from Nissan. These claims are moot. However, the Motion will be **DENIED** as to Plaintiff's claim for penalties under ERISA § 502(c) for Defendants' failure to produce Plan documents.

The Motion for Summary Judgment on Plaintiff's Claim for ERISA § 502(c) Penalties for Failure to Provide Plan Documents filed by Plaintiff (Docket No. 61) will be **GRANTED**.

An appropriate Order will enter.

ALETA A. TRAUGER
United States District Judge